Russell B. SMITH, Plaintiff-Appellee,

v.

UNION CARBIDE CORPORATION,
Defendant-Appellant,

No. 16043.

United States Court of Appeals

Sixth Circuit.

Sept. 10, 1965.

E. H. Rayson, Knoxville, Tenn., John B. Rayson, Knoxville, Tenn., on brief; Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., of counsel, for appellant.

H. Calvin Walter, Knoxville, Tenn., for appellee.

Before CECIL, O'SULLIVAN and PHILLIPS, Circuit Judges.

CECIL, Circuit Judge.

Russell B. Smith, plaintiff-appellee, brought an action in the United States

District Court for the Eastern District of Tennessee to recover from Union Carbide Corporation, defendant-appellant, pension benefits arising out of a collective bargaining agreement between the Union Carbide Corporation and the Oil, Chemical and Atomic Workers International Union, AFL–CIO. Russell B. Smith was one of the employees of Union Carbide Corporation on whose behalf the collective bargaining agreement was made. The parties will be referred to as plaintiff and defendant, respectively.

The plaintiff had been employed by the defendant for more than fifteen years prior to January 12, 1961, when he was given a medical termination of employment by the defendant. For some time before his discharge, the plaintiff had been frequently absent because of illness. Near the end of his employment he was absent from May 21, 1960, to October 13, 1960. The plaintiff then returned to work and remained on the job until December 16th. During his absences, the plaintiff received medical treatment from members of the defendant's medical staff. J. C. Runyon, supervisor of employment and labor relations of defendant, sought the help of the union to encourage the plaintiff to accept psychiatric treatment. Through the influence of union officials, plaintiff was persuaded to go to St. Albans Hospital for evaluation and treatment.

He entered the hospital on August 29, 1960. The diagnosis was "Anxiety reaction, chronic * * * in a passive dependent personality." The plaintiff refused to give permission for insulin shock treatment as recommended by the hospital authorities. He left the hospital against medical advice one week after he had entered. On January 12, 1961, Dr. Rucker, a physician in the employ of the defendant consulted with the plaintiff and told him that he must either accept and cooperate with good psychiatric care or be given a "medical termination." The plaintiff refused psychiatric treatment and the discharge followed. The union was notified of the discharge and no grievance was filed in connection with the discharge either by the plaintiff or the union.

On January 23, 1963, more than two years after his employment had been terminated, the plaintiff through his attorney filed a claim with the defendant for pension benefits under the collective bargaining agreement.[1] The defendant immediately notified the union that the claim was filed and that a dispute existed as to the total and permanent disability of the plaintiff. In accordance with the contract, the defendant appointed Dr. Henry B. Ruley, a private practitioner at Oak Ridge, Tennessee, and the union appointed Dr. Sheldon E. Domm, plaintiff's own physician, to examine the plaintiff as to his disability. These two doctors were of the opinion that the plaintiff was not totally and permanently disabled as a result of any organic disease. They agreed that the third physician should be one specializing in neuro-psychiatry. Dr. Andrew S. Wachtel, a psychiatrist with the Oak Ridge Mental Health Center, was then appointed as the third physician. Dr. Wachtel concluded that the plaintiff was not totally disabled either at the time of the termination of

---

1. The agreement provides for a pension plan, paragraph 4 of which reads as follows:

"4. If any dispute shall arise between the Company and any bargaining-unit employee as to whether such employee is, or continues to be totally and permanently disabled within the meaning of the Pension Plan, such dispute shall be resolved as follows:

"The employee shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by the Union. If they disagree concerning whether the employee is totally and permanently disabled, the question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the employee and consultation with the other two physicians, shall decide the question. The fees and expenses of the third physician shall be shared equally by the Company and the Union."

his employment or at the time of the doctor's examination in May of 1963.

Dr. Wachtel's decision was rendered on May 16, 1963, and this action was brought in the District Court in September following. The plaintiff sought disability pension benefits which he claimed under the collective bargaining agreement and in the alternative damages for an alleged wrongful discharge. By amendment to the complaint the plaintiff charged that the defendant failed to properly advise him about his rights at the time of the termination of his employment. Jurisdiction was invoked under Section 1332, Title 28, U.S.C., diversity of citizenship and the amount in controversy being in excess of $10,000.

The case was tried to the Court without a jury. The district judge took jurisdiction on the ground of diversity of citizenship and noted probable jurisdiction under Section 301 of the National Labor Relations Act.[2] The district judge decided the case in favor of the plaintiff on his claim for pension benefits. He did not reach the alternative claim for damages or the claim made in the amended complaint that the defendant failed to advise the plaintiff of his rights upon the termination of employment.

The trial judge found that the arbitrators, Doctors Ruley, Domm and Wachtel, did not comply with the provisions of the contract between the union and the defendant, in that they did not consult with each other about plaintiff's condition after their examinations. The trial judge concluded that the decision of the arbitrators therefore was arbitrary and not binding on either of the parties. He then proceeded to hear the case de novo. He found that the plaintiff was totally and permanently disabled, within the meaning of the contract, at

the time of the termination of his employment and that he was entitled to pension benefits. This appeal followed.

The defendant claims, first, that the decision of the arbitrators, as announced by Dr. Wachtel, was final and binding. In the alternative, it claims that the court, finding that the arbitration procedure was not followed, the case should have been remanded to the arbitrators for further procedure, in conformity with the provisions of the contract. We accept and approve the finding and conclusion of the trial judge that the arbitrators did not follow proper procedure and that their decision is not binding on the parties.

The claim is made on behalf of the plaintiff that the procedure contemplated by the parties in the contract does not possess the finality of the characteristic arbitration procedures under the Labor Management Relations Act. We cannot accept this as a valid premise upon which to decide this case. In our opinion, the parties contemplated and provided for arbitration procedures for the settlement of disputes arising out of the pension plan of the collective bargaining agreement concerning total and permanent disability of an employee.

 The courts favor arbitration as a means of promoting harmony in the relations between labor and management and of peacefully settling labor disputes. John Wiley & Sons v. Livingston, 376 U.S. 543, 549–550, 84 S.Ct. 909, 11 L.Ed. 2d 898; Drake Bakeries, Inc. v. Local 50, Am. Bakery, etc., Workers, 370 U.S. 254, 263, 82 S.Ct. 1346, 8 L.Ed.2d 474; United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566–567, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347,

2. Section 301 National Labor Relations Act, Section 185, Title 29, U.S.C.
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424; Brotherhood of L. F. & E. v. Kennecott Copper Corp., 338 F.2d 224, C.A.10; United Brick & Clay Workers of America v. A. P. Green Fire Brick Co., 232 F.Supp. 223, 226 (E.D.Mo.).

We think the district judge exceeded his authority when he undertook to decide plaintiff's claims on their merits. The Supreme Court said in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, at p. 567, 80 S.Ct. 1343, at p. 1346:

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

> "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."

■ The parties agreed that in the event of a claim by an employee for pension benefits any dispute as to the total and permanent disability of the employee should be settled by arbitration. The only rights the plaintiff has to pension benefits arise out of the contract between the union and the defendant. He is not entitled to any pension benefits either in law or equity that are not given to him within the four corners of that instrument. A bona fide dispute arose and the parties to the contract acted promptly to settle it under the terms of that contract. The method of settling the dispute is as much a part of the contract as the payment of benefits under the pension plan.

■ We conclude that the district judge should have remanded the case to the arbitrators for procedure in accordance with the terms of the contract. The arbitrators should not only decide the question of total and permanent disability of the plaintiff but should set forth their reasons for their conclusions.

The judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.