James F. McDONALD, Plaintiff,

v.

**PENN CENTRAL TRANSPORTATION COMPANY, Defendant.**

Civ. A. No. 71–1729 LC.

United States District Court,
D. Massachusetts.

Feb. 8, 1972.

James T. Grady, Grady & Kaplan, Boston, Mass., for plaintiff.

David W. Walsh, Richard J. Ferriter, Westwood, Mass., for defendant.

## MEMORANDUM AND ORDER

CAMPBELL, District Judge.

Plaintiff in this action asks the Court to set aside that part of an award of the Third Division of the National Railroad Adjustment Board [the Board] denying him back pay and lost benefits for the period between his dismissal by his employer and his reinstatement by the Board. Plaintiff alleges jurisdiction under 45 U.S.C. Sec. 153(p) and (q).

On November 17, 1971, defendant's motion to dismiss for failure to state a claim upon which relief could be granted was denied (Wyzanski, S. D. J.). Both parties have moved for summary judgment, the motions having been heard on the pleadings and a record of the proceedings before the National Railroad Adjustment Board (Docket No. TE–18235).

Upon consideration, defendant's motion is allowed; plaintiff's is denied.

Plaintiff, after thirteen years varied service with the New York, New Haven and Hartford Railroad,[1] was newly assigned on May 28, 1968 to the position of "Agent-Operator" at Hyannis, Massachusetts. On the second day of his assignment, May 29, he was absent from his post for four and one-half hours. Upon hearing of this absence, plaintiff's superior, one Richard H. Neville, a trainmaster, suspended him from service. After serving notice on plaintiff that his case was to be investigated, the employer, through another of its trainmasters, C. H. Powers, conducted a fifty-minute hearing of plaintiff's case on June 6, 1968, at the Railroad Y.M.C.A. in Boston, Massachusetts.

The plaintiff and Neville both testified, the issue being whether the plaintiff's absence from his post violated company rules. Plaintiff testified that during his absence he was familiarizing himself with the territory under his jurisdiction, in accordance with his duties. Mr. Neville testified that in a telephone call from Yarmouth, Massachusetts at 11:30 a. m. on May 29, plaintiff had told him that he was looking for a house to occupy when he moved to his new location. The result of the hearing was a letter from the company to the plaintiff, dated June 13, 1968, informing plaintiff that he was dismissed from service for violating Company Rule O, the General Notice, and Rule 731.[2]

Plaintiff's union, the Transportation-Communication Employees Union, thereafter appealed the dismissal through the proper grievance procedures, finally reaching the Third Division of the National Railroad Adjustment Board. Both parties waived an oral hearing be-

---

1. The present defendant is a successor to that corporation.

2. These Rules read as follows:

"RULE O

"Employes [sic] are prohibited when on duty from reading newspapers, books or periodicals, engaging in games or unnecessary conversation, sleeping, using unauthorized radio or television sets on Company property or in other manner having their attention diverted from their duties. Gambling in any form is forbidden on Company property.

"Employes [sic] must devote themselves exclusively to the Company's service during prescribed hours, reside wherever required and obey instructions from the proper authority. They must not absent themselves from duty, exchange duties with, or substitute others in their place, nor engage in other business which in-

terferes with the proper performance of his duties as an employe [sic] or which is detrimental to or in competition with the Company."

"GENERAL NOTICE

"Safety is of the first importance in the discharge of duty.

"Obedience to the rules is essential to safety.

"To enter or remain in the service is an assurance of willingness to obey the rules.

"The service demands the faithful, intelligent and courteous discharge of duty.

"To obtain promotion, ability must be shown for greater responsibility."

"RULE 731

"Employes [sic] must report for duty at the required time, and those in train service will assist in making up their trains when necessary."

fore the Board, but submitted statements of facts and arguments. The Board also had before it a stenographic transcript of the earlier hearing.

In a written decision dated November 25, 1969, the Board found that the plaintiff had received ample notice, that he had been given the right to present witnesses and cross examine witnesses, that he had been represented at the hearing (he was represented by a union representative), and that he had not complained of the way in which the hearing was conducted. It concluded that he had been given a "fair and impartial hearing" within the meaning of Article 27(b) of the union-company collective bargaining agreement, which reads:

"(b) An employee shall not be disciplined without a fair and impartial hearing."

The Board also found that plaintiff's "failure to object to any procedural defect constituted a waiver of any possible defects."

However, even though it upheld the employer's finding that plaintiff was guilty of an unauthorized absence, the Board restored plaintiff to his job, "because of extenuating circumstances brought about by the necessary change of [his] residence and the small amount of unauthorized time [he] was absent." But it did not order restoration of back pay and lost benefits. Plaintiff asks this Court to set aside that part of the Board award denying him restoration of back pay and lost benefits, and to order them restored to him.

## II

■ Plaintiff brings his action under 45 U.S.C. Sec. 153(p) and (q). Subparagraph (p) provides for action in the District Court to enforce an order of the Railroad Adjustment Board against a noncomplying carrier. Since plaintiff does not allege that defendant has refused to comply with that part of the Board award ordering reinstatement, subparagraph (p) is not applicable.

Subparagraph (q) provides that the findings by the National Railroad Adjustment Board shall be "conclusive on the parties" in an action seeking review by the District Court,

"except that the order of the division may be set aside . . . or remanded . . . for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

Plaintiff does not allege that the Board failed to conform or confine itself to its jurisdiction or that a Board member committed fraud or otherwise was corrupt. He founds his case upon the propositions that (1) a hearing (or, as it is alternatively termed, an investigation) cannot be "fair and impartial" in accordance with Article 27(b) of the collective bargaining agreement if it is conducted by the employer, and (2) that the National Railroad Adjustment Board, in ruling that plaintiff did receive a fair and impartial hearing, failed to protect his rights under the contract and hence failed "to comply with the requirements of [Section 153]".

■ Plaintiff's position amounts to the assertion that this Court should review the correctness of the Board's decision under the guise of deciding whether or not, in determining plaintiff's contractual rights, the Board complied with the requirements of Sec. 153. But, while this Court may determine whether or not the Board complied with procedural requirements set out in Sec. 153,[3] its statutory authority to review the Board's finding is restricted. The Supreme Court has consistently emphasized

---

3. For example, subparagraph (j) sets out notice requirements, (k) provides, with a limited exception, that award may be made only by the full division, and (m) provides that awards shall be in writing. It is not contended that the Board failed to comply with procedural requirements.

that the Railway Labor Act makes the National Railroad Adjustment Board the final arbiter of contractual disputes submitted to it. *See* Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), Union Pacific Railway Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959). Brotherhood of Locomotive Engineers v. Lousiville & Nashville Railway Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). Only where the Board's interpretation is "wholly baseless and completely without reason" may the Court set aside an order. Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 261, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965).[4]

The Board in the case before me found that plaintiff had received a fair and impartial hearing, since he received adequate notice, was represented at the hearing, and was accorded the right to summon witnesses and cross-examine witnesses. Further, it found that he had failed to object to any procedural defect, and had not complained of the manner in which the investigation was conducted.

■■ Both on its face, and from my examination of the prior proceedings as reflected in the Board's file, I conclude that the Board's decision clearly was not "wholly baseless or without reason". The language of Article 27(b) of the collective bargaining agreement entitling an employee to a "fair and impartial" hearing is not necessarily inconsistent with a hearing before a company representative. The language would have to be interpreted in the context of the agreement, of the Railway Labor Act, and of the customs in the industry. The

plaintiff suggests that the company is bound to obtain a totally disinterested person, such as (it was suggested in argument before me) a priest or minister. However, the Railway Labor Act, at 45 U.S.C. § 153(i), provides that employee disputes shall be handled "in the usual manner up to and including the chief operating officer". Absent some special provision in the bargaining contract for the hire of outside hearing officers, the Board might well have read the words "fair and impartial hearing" as characterizing the nature of the hearing to be held before a suitable company official, as the Railway Labor Act seems to contemplate.

In any event, the Court cannot say, and I do not find, that the Board's decision was wholly baseless and without reason.

### III

■ There also appears in plaintiff's complaint the allegation that he was deprived of due process of law, which he claims to be a "fundamental" as well as a contractual right. The Court will review a Board award on a claim of denial of due process only if due process was denied *"by some conduct of the . . . Board"*. Edwards v. St. Louis-San Francisco Railroad Co., 361 F.2d 946, 953 (7th Cir. 1966) (italics in the original). As the Second Circuit said in D'Elia v. New York, New Haven & Hartford Railway Co., 338 F.2d 701, 702 (1964):

"The initial hearing in D'Elia's case was held by a representative of the employer railroad. This is the procedure provided in the collective agreement . . . and it is the procedure contemplated by the Railway

4. The 1966 Amendment to the Act, which added the above quoted clause, and struck from subparagraph (m) a phrase excepting from finality any money award, narrowed rather than broadened the scope of review. In Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., 415 F.2d 403 (5th Cir. 1969), the Court, through Judge Wisdom, discusses comprehensively the role of a district court in reviewing Board awards. It suggests that the *Gunther* test, by which the Court judges whether or not a Board award "was wholly baseless and without reason", goes to a determination whether or not the Board has exceeded its jurisdiction. See 415 F.2d at 408–415.

Labor Act . . . Under the Act, D'Elia was entitled to a completely impartial hearing only when the case reached the referee designated to sit with the Board. As long as the final hearing officer was impartial the requirements of due process were satisfied."

In the present case, there is no question of the impartiality of the referee designated to sit with the Board. The review of the plaintiff's case by the National Railroad Adjustment Board pursuant to appropriate and fair procedures would seem to answer the contention that plaintiff has been denied the fundamentals of due process. (In this regard, it is significant that the plaintiff, although attacking the impartiality of the initial hearing, does not request a new hearing; he seeks merely a setting aside of that portion of the Board's order which deprived the plaintiff of compensation for all time lost, the remainder of the Board's order being satisfactory to him.)

Defendant's motion for summary judgment is allowed. Plaintiff's motion for summary judgment is denied.